U.S. COURT OF APPEALS
RECEIVED
10TH CIRCUIT
2012 FEB -1 AM 11: 13

In The United States Court of Appeals
For The Tenth Circuit

No. 11-1322

United States of America,
    Plaintiff-Appellee,

V.

Ismael Arenas Gonzáles
    Defendant-Appellant.

On Appeal From The United States District Court
For The District of Colorado
The Honorable Robert E. Blackburn

Appellant's Pro Se Response to Counsel's Anders
Brief with Authorities and Points of Law Why
The Convictions Must Be Vacated

Appellant's Informal Brief

Ismael Arenas Gonzáles
Appellant Pro Se
Reg. No. 32780-013
United States Penitentiary
PO. Box 24550
Tucson, AZ 85734

# Table of Contents

Table of Authorities ——————————————————— ii

Statement of Jurisdiction ————————————————— 1

Statement of the Issues Presented For Review———————— 2

Preliminary Opening Statement ——————————————— 2

Arguments
   I. The Legislative History of 18 USC §3231
      does not constitutionally nor validly exist ——————— 2

   II. The Judicial Article, Art. III, §2, impeaches
       legislation by Congress over criminal cases ————————— 8

Conclusion ————————————————————————— 22

Certificate of Service.—————————————————————— 22

Appendix - Attached

   Letters from Office of the Clerk, U.S. House of Representatives,
   attesting to no quorum present when 18 USC §3231 was first
   enacted into Title 18 of the United States Code.

   Letter from Office of the Law Revision Counsel of the House
   of Representatives attesting predecessor of 18 USC §3231-
   former 28 USC §371- expressly repealed in 1948.

   Congressional Record-House, 1947, pp. 5048-5049, attesting to
   only 44 Members present, without names recorded, thus showing No
   quorum to constitutionally enact 18 USC §3231.

   Constitution-Jefferson's Manual and Rules of the House of
   Representatives of the United States, 80th Congress, copyright 1947,
   U.S. Govt pr. office-in relevant part- requiring a quorum and the
   consequences for the lack of.

   Hinds' Precedents of the House of Representatives of the United States,
   Vol. IV, copyright Govt Pr. office 1907- in relevant part- regarding
   the quorum and consequences for the lack thereof.

Table of Authorities

Adkins v. Children's Hospital, 261 u.s. 525 (1923)                                        4, 5, 8

Am. Bankers Ins. Group v. United States, 408 F.3d 1328 (11thCir. 2005)      11

Arbaugh v. Y+H Corp., 546 u.s. 500 (2006)                                               13

Association v. Westinghouse Elec. Corp., 348 u.s. 437 (1955)                     12

Barnhart v. Thomas, 540 u.s. 20 (2003)                                                  11

Bed Roc Ltd., LLC v. United States, 541 us. 176 (2004)                            11

Bender v. Williamsport Area School Dist., 475 u.s. 534 (1986)                    5

Bond v. United States, 131 s.ct. 2355 (2011)                                        14, 15

Brecht v. Abrahamson, 507 u.s. 619 (1993)                                           21

Brown v. Louisiana, 383 u.s. 131 (1966)                                               12

Caha v. United States, 152 u.s. 211 (1894)                                         13, 18

Chicago v. Intl. Coll. of Surgeons, 522 u.s. 156 (1997)                             9

City of Rome v. United States, 446 u.s. 156 (1980)                                 11

Colfax County Bd. of County Comm'rs v. New Hampshire,
          16 F. 3d. 1107 (10th Cir. 1994)                                                  11

Dodd v. United States, 545 us. 353 (2005)                                            9

Dred Scott v. Sandford, 19 How. 393 (1857)                                        9, 17

Ex parte McCardle, 7 wall. 506 (1869)                                                 7

Ex parte Smith, 94 u.s. 455 (1877)                                                     5

Field v. Clark, 143 u.s. 649 (1892)                                                     6

Finley v. United States, 490 u.s. 545 (1989)                                        8, 9

Georgia v. Pennsylvania R. Co. 324 u.s. 439 (1945)                               12

Givens v. Zerbst, 255 us. 11 (1921)                                                   5

Haines v. Kerner, 404 us. 519 (1972)                                                2

Hammer v. Dagenhart, 247 u.s. 251 (1918)                                        16, 17

Hill v. Whitlock Oil Services, Inc., 450 F.2d. 170 (10th Cir 1971)          11

In re Clay, 35 F.3d. 190 (5th Cir. 1994)          8

In re Ladd, 74 Fed. 31 (C.C. N.D. Neb. 1896)          19

INS v. Chadha, 462 U.S. 919 (1983)          4, 6

Japan Whaling Association v. American Cetacean Society, 478 U.S. 221 (1986)          4

Lake County v. Rollins, 130 U.S. 662 (1889)          10

Lundy v. Levi, 2011 U.S. Dist. LEXIS 44751 (D.C. N.J. 2011)          6, 7

Mansur v. PFL Life Ins. Co., 589 F.3d 1315 (10th Cir. 2009)          11

Marbury v. Madison, 1 Cranch 137 (1803)          8

McCulloch v. Maryland, 4 Wheat. 316 (1819)          16

Menna v. New York, 423 U.S. 61 (1975)          20

Mt. Health City Bd. of Ed. v. Doyle, 429 U.S. 274 (1977)          15

Oklahom Tax Comm. v. Jefferson Lines, Inc. 514 U.S. 175 (1995)          16

Nashville v. Cooper, 6 Wall. 247 (1868)          9

U.S. Nat. Bank of Ore. v. Ins. Agents, 508 U.S. 439 (1993)          2

United States v. Ballin, 144 U.S. 1 (1892)          3

United States v. Bevans, 3 Wheat. 336          13

United States v. Butler, 297 U.S. 1 (1936)          4

United States v. Felipe, 2007 U.S. Dist. LEXIS 43520 (E.D.Pa. 2007)          6, 7

United States v. Flores, 289 U.S. 137 (1933)          13

United States v. Hudson, 7 Cranch 32 (1812)          7

United States v. IBM Corp., 517 U.S. 843 (1996)          22

United States v. Johnson, 457 U.S. 537 (1982)          21

United States v. Lopez, 514 U.S. 549 (1995)          16

United States v. McCuistan, 2007 U.S. Dist. LEXIS 67467 (S.D.Tex. 2007)          7

United States v. Munoz-Flores, 495 U.S. 385 (1990)          4, 7

United States v. Olano, 507 U.S. 725 (1993)                                      21

United States v. Risquet, 426 F.Supp.2d 310 (E.D. Pa. 2006)               6, 7

United States v. South-Eastern Underwriters Assn., 322 U.S. 533 (1944)    15

United States v. Tony, 637 F.3d 1153 (10th Cir. 2011)                     2, 6

United States v. Tully, 140 Fed. 899 (C.C.D. Mont. 1905)                   19

U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779 (1995)                  12, 17

Vermont ANR v. U.S. ex rel. Stevens, 529 U.S. 765 (2000)                12 - 13

Vimar Seguros v. M/V Sky Reefer, 515 U.S. 528 (1995)                       9

Walling v. General Industries Co., 330 U.S. 545 (1947)                     12


Statutes
28 U.S.C. § 1291                                                            1
18 U.S.C. § 3231                                                           1



Other Authorities
Report of The Interdepartmental Committee
For The Study of Jurisdiction Over Federal Areas
Within The States, copyright U.S. Govt Pr. Office
April 1956 (Pt.I) and June 1957 (Pt.II)                              18-19, 20

In The United States Court of Appeals
For The Tenth Circuit

_____

No. 11-1322

_____

United States of America,
    Plaintiff-Appellee,

v.

Ismael Arenas Gonzáles
    Defendant-Appellant,

_____

On Appeal from the United States District Court
For the District of Colorado
The Honorable Robert E. Blackburn

_____

Appellant's Pro Se Response to Counsel's Anders
Brief with Authorities and Points of Law
Why the Convictions must be Vacated

_____

Appellant's Informal Brief

_____

Statement of Jurisdiction

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. The district court, will be shown, did not have subject-matter jurisdiction over the criminal case below pursuant to 18 U.S.C. 3231. The district court entered final judgment on July 12, 2011. Defendant filed his notice of appeal on July 13, 2011. This Court granted appellant an extension of time to file a response to counsel's *Anders* brief by February 2, 2012.

- 1 -

## Statement of the Issues Presented for Review

1) Whether the showing, by documentary evidence and legislative history of the subject-matter jurisdiction statute, 18 USC, § 3231, was not constitutionally enacted requires reversal of the convictions.

2) Whether the judicial Article of the Constitution, which limits the "Power" to "Cases, in Law and Equity" is construed to be cases civil in nature only.

3) Whether the errors committed in the underlying case were structural in nature requiring automatic reversal.

## Preliminary Opening Statement

As the Statement of the Case and Statement of Facts have already been set out in Counsel's _Anders_ Brief, this Court is asked to accept and construe this Informal Brief of Appellant pursuant to _Haines v. Kerner_, 404 u.s. 519, 520, 92 S.ct. 594, 30 L.Ed.2d 652 (1972), where the issues presented should be construed as based on fact and law.

## Argument

I.  The legislative history of 18 usc, § 3231, which this Court is asked to take judicial notice of, irrefutably demonstrates § 3231 does not exist validly.

"[A] court properly asked to construe a law has the constitutional power to determine whether the law exists...." _U.S. Nat. Bank of Ore. v. Ins. Agents_, 508 us. 439, 446 (1993).

When considering what evidence may be considered to uncover whether a law exists, there are "no limits on the evidence a court may consider in determining [whether] a bill ... has passed Congress," *Id.,* 508 U.S, at 455 n.7 (internal citations omitted).

The attached letters and communicative documents in the Appendix clearly demonstrate there was no quorum established when §3231 was first enacted into the enrolled bill, that became Public Law 80-772.

Unlike the arguments raised in *United States v. Tony,* 637 F.3d 1153, 1157-58 (10th Cir. 2011), regarding Public Law 280, Ch. 505, 67 stat. 588 (1953), that did not concentrate on the fact that no quorum was in evidence when §3231 was voted on and included in the enrolled bill, this appellant avers, correctly, that §3231, which was not a subject statute for revision and codification, was not within Title 18 of the United States Code previously, and required the action of a majority of the registered members of the House of Representatives (a quorum) in order to render constitutional §3231 within the enrolled bill.

The Supreme Court teaches, clearly, in *United States v. Ballin,* 144 US 1, 5-6, 36 LEd 321 (1892), that the Constitution requires a quorum be present before it can do business, such as enacting, for the first time, a law within a Title that was not previously within said Title—like §3231 that was not previously within Title 18 for the purpose of revision,

Relying on <u>INS v. Chadha</u>, 462 U.S. 919 (1983), the Supreme Court has instructed the courts, "in fidelity to the Constitution," id., at 943, to determine whether a law, "on which depend public and private interests of vast magnitude, ... did not become a law." Id. And, "under the Constitution, one of the Judiciary's characteristic roles is to interpret statutes [and determine whether constitutionally they exist], and we cannot shirk this responsibility merely because our decision may have significant political overtomes [or consequences]." Japan Whaling Association v. American Cetacean Society, 478 U.S. 221, 230 (1986). See also Chadha, supra. Cf., Adkins v. Children's Hospital, 261 U.S. 525, 544 (1923) (describing "judicial duty" "to declare and enforce the rule of the supreme law and reject that of an inferior act of legislation which, transcending the Constitution, is of no effect, and binding on no one."); United States v. Munoz-Flores, 495 U.S. 385, 396-397 (1990); and United States v. Butler, 297 U.S. 1, 62 (1936): "All legislation must conform to the principles it lays down. When an act of Congress is appropriately challenged in the courts as not conforming to the constitutional mandate the judicial branch of the Government has only one duty, — to lay the article of the Constitution which is invoked [the Quorum Clause] beside the statute which is challenged and to decide whether the latter squares with the former."

There can be no doubt, whatsoever, when examining the legislative history of §3231, that §3231 can not be held to exist if it was enacted, for the first time during the 80th Congress within Title 18 of the United States Code, in violation of "the constitutional [quorum] mandate." And where "by clear and indubitable demonstration, a statute be opposed to the Constitution, we have no choice but to say so." _Adkins_, supra, id, et 544.

Thus, this Court must adhere to the principle announced in _Bender v. Williamsport Area School Dist._, 475 U.S. 534 (1986), that it "has a special obligation to 'satisfy itself not only of its own jurisdiction but also that of the lower courts in a cause under review.'" Id., 475 U.S, et 541 (internal citations omitted).

With the evidence staring in one's face, in the form of the Congressional Record and other documents in the Appendix, the Government is unable to abide by the principle set down by the Supreme Court: "The facts upon which the jurisdiction of the courts of the United States rest must, in some form, appear in the record of all [cases] prosecuted before them. To this rule there are no exceptions." _Ex parte Smith_, 94 U.S, 455, 456, 24 L.Ed. 165, cf., e.g., _Givens v. Zerbst_, 255 U.S. 11, 20, 65 L.Ed 475 (1921)("wherever a fact upon which the jurisdiction of a... court of limited jurisdiction depends is questioned, it must appear in the record that such fact was established.").

-5-

Thus, this first issue is urged should be addressed on the merits of the "substantive" law, under the mandate of the "Quorum Clause," and not based on the "procedure" in which §3231 was enacted into the enrolled bill, like so many litigants mistakenly presented in the lower courts throughout the Country. See, eg., Lundy v. Levi, 2011 U.S. Dist. LEXIS 44751 at *12 (D. Ct. N. J. 2011)(applying the enrolled bill rule); United States v. Felipe, 2007 U.S. Dist. LEXIS 43520 (E. D. Pa. 2007)(arguing, erroneously, a sine die recess between the votes of the House and Senate); and Tony, supra, arguing the wrong issue.

There have also been cases where the defendant attempted to object to the constitutionality of the entirety of Title 18 of the United States Code that was revised by Public Law 80-772. See, e.g., United States v. Risquet, 426 F. Supp. 2d 310, 311 (E. D. Pa. 2006): "because of a defect in the 1948 passage of Public Law 80-772, §3231 as well as all subsequently enacted statutes which rely upon §3231 for court jurisdiction are similarly invalid." Id.

But, the focus should be only on the jurisdictional statute that was not the subject of an amendment or for revision— §3231— as it was not within Title 18 U.S.C. before the 1948 enactment and required more than the actual 44 members of the House to be present when considered and voted upon and absent such a constitutional quorum it could not and "did not become a law." See Chadra, supra, quoting Field v. Clerk, 143 U.S. 649, 670 (1892).

There have even been lower courts who have, indirectly, cast doubts as to the validity and constitutionality of §3231, by believing that the courts "would nonetheless retain

-6-

jurisdiction ... because the predecessor statute to §3231 also provides for such [subject-matter criminal] jurisdiction," *United States v. McCuiston*, 2007 US, Dist. LEXIS 67467 * 39 (S.D. Tex. 2007). See, also, *Risquet*, supra, at 311 (same); *Levi*, supra (same); and *Felipe*, supra (same).

The predecessor those district courts allude to continue in effect was former Section 371 of Title 28 of the United States Code. But, those findings are clearly erroneous, since the history of former 28 USC, § 371 was expressly repealed by the legislative Act of 1948, and, as this Court clearly recognizes, "when an Act of the Legislature is repealed, it must be considered ... as if it never existed." *Ex parte McCardle*, 7 Wall 506, 514, 19 L. Ed. 264 (1869) (internal citation and quotation marks omitted).

It goes without saying that in order for the government to be able to enforce the criminal laws and prosecute them in a court of the Union, the Supreme Court requires three facts to exist: "The legislative authority of the Union must first make an act a crime, affix a punishment to it, and declare the court that shall have jurisdiction of the offence," *United States v. Hudson*, 7 Cranch 32, 34, 3 L. Ed. 259 (1812).

But when the "declaration" of which court shall have the jurisdiction of the crime is performed in a manner that assuredly violates the constitutional quorum clause mandate, "the principle that the courts will strike down a law when Congress has passed it in violation of such a command has been well settled for [over] two centuries." *Munoz-Flores*, supra, 495 US, at 396-97, 109 LEd2d 384, 110 S.Ct. 1964 (1990) (internal citation omitted).

-7-

"Regardless, 'the fact that a given law... is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution,'" *In re Clay*, 35 F.3d 190, 195 (5th Cir. 1994) (internal citation omitted).

Thus, standing alone §3231, that was enacted in the absence of a quorum, notwithstanding that the rest of Title 18 U.S.C. was properly "amended" and "revised," as it was pre-existing within the Title, cannot be saved and "it is the province and duty [of this Court] to say what the law is," *Marbury v. Madison*, 1 Cranch 137, 177, 2 LEd 60 (1803), declaring that the Constitution's "Quorum Clause," being the Supreme law of the land, governs this case, and the showing that it was not established when §3231 was first enacted requires the striking down of §3231 as a law "transcending the Constitution, is of no effect, and binding on no one," *Adkins, supra*, 261 us. et 544, 67 LEd 785 (1923).

Therefore, the Court should reverse the judgment of the court below for want of constitutionally valid jurisdiction.

## II. The Judicial Article, Itself, impeaches the "Judicial Power" over criminal cases.

As the Supreme Court continuously instructs: "It remains rudimentary law that 'as regards all courts of the United States inferior to this tribunal, two things are necessary to create jurisdiction, whether original or appellate. The Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it. ...'" *Finley v. United States*, 490 u.s. 545, 547-48, 104 LEd2d 593, 109 s.ct. 2003 (1989) (emphasis added).

-8-

See also *Chicago v. Intl. Col. of Surgeons*, 522 US 156, 191, 139 L.Ed.2d 525, 118 S.Ct. 523 (1997) (same)(citing *Finley*, supra, and quoting *Nashville v. Cooper*, 6 Wall 247, 252, 18 L.Ed 851 (1868). And *Cooper*, supra, required, as to the Constitution and statute, "[t]heir concurrence is necessary to vest it," *Id.*, 6 Wall at 252.

Just as the drafters of the Declaration of Independence, the Framers of the Constitution can be said to have been

"great men—high in literary acquirements—high in their sense of honor, and incapable of asserting principles inconsistent with those on which they were acting. They perfectly understood the meaning of the language they used, and how it would be understood by others;... They spoke and acted according to the then established doctrines and principles, and in the ordinary language of the day, and no one misunderstood them."

*Dred Scott v. Sandford*, 19 How 393, 410, 15 LEd 691 (1857).

Thus, applying the principle, supra, that the Framers, just like legislatures, said in the Constitution what it means and means in an article therein what it says, cf., e.g., *Dodd v. United States*, 545 U.S, 353, 162 L.Ed.2d 343, 125 S.Ct. 2478 (2005); "we must presume that [the] legislature says in a statute what it means and means in a statute what it says there," *id.*, at 357 (internal citation omitted), and because "Congress is presumed to know the law," *Vimar Seguros v. M/V Sky Reefer*, 515 U.S. 528, 554, 132 L. Ed.2d 462, 115 S.Ct. 2322 (1995), this Court must follow the reasoning and admonition by the Supreme Court when it comes to construing the Constitution.

"The object of construction, applied to a constitution, is to give effect to the intent of its framers, and of the

people in adopting it, This intent is to be found in the instrument itself; and when the text of a constitutional provision is not ambiguous the courts, in giving construction thereto, are not at liberty to search for its meaning beyond the instrument.

To get at the thought or meaning expressed in a ... Constitution, the first resort, in all cases, is to the natural signification of the words, in the order of grammatical arrangement in which the framers of the instrument have placed them, If the words convey a definite meaning, which involves no absurdity nor any contradiction of other parts of the instrument, then the meaning, apparent on the face of the instrument, must be accepted, and neither the courts nor the legislature have the right to add to it or take from it. ...

There is even stronger reason for adhering to this rule in the case of a Constitution than that in a statute, since the latter is passed by a deliberate body of small numbers, a large proportion of whose members are more or less conversant with the niceties of construction and discrimination, and fuller opportunity exists for attention and revision of such a character, while constitutions, although framed by conventions, are yet created by the votes of the entire body of electors in a State, the most of whom are little disposed, even if it were able, to engage in such refinements. The simplest and most obvious interpretation of a constitution, if in itself sensible, is the most likely to be that meant by the people in its adoption." Lake County v. Rollins, 130 U.S. 662, 670, 671, 32 L.Ed. 1060, 9 S.Ct. 65 (1889).

-10-

Construing Article III, §2, of the Constitution, which provides and limits the "judicial Power" of the Judicial Branch to "Cases, in Law and Equity," " to the natural signification of the words, [and] in the order of grammatical arrangement in which the Framers of the instrument have placed them," Id., 130 U.S, at 670, "there is nothing in, the [constitutional] context to suggest that "and" is used in the provision as meaning "or." The phrase is unambiguous. The plain meaning is clear— "and" is used conjunctively." Am, Bankers Ins. Group v. United States, 408 F.3d 1328, 1332 (11th Cir., 2005). Thus, the Framers expressly said, in the Article, what it means and means in the Article what it says there. Cf., eg, Bed Roc Ltd., LLC v. United States, 541 U.S, 176, 183, 124 S.Ct. 1587, 1593, 158 L.Ed.2d 338 (2004)(internal citation omitted).

Thus, under the 'rule of the last antecedent," " a limiting clause or phrase ... should ordinarily be read as modifying only the noun or phrase that it immediately follows,...," Barnhart v. Thomas, 540 U.S, 20, 26, 157 L.Ed.2d 333, 124 S.Ct. 376 (2003)(internal citation omitted). See, eg, Mansur v. PFL Life Ins. Co., 589 F.3d 1315, 1320 (10th Cir. 2009)(same)(citing Barnhart, supra).

Therefore, when a provision of law sets out elements in the conjunctive, all such elements must be present and established in order to effectuate the statutes' application. See, eq., Colfax County Bd. of County Comm'rs v. New Hampshire, 16 F.3d 1107, 1110 (10th Cir. 1994); and Hill v. Whitlock Oil Services, Inc., 450 F.2d 170, 173 (10th Cir. 1971).

Cases from the Supreme Court likewise have found that when any controlling provision is phrased in the conjunctive, by the use of the word "and," all conditions of the provision must be present to effectuate the application thereof. See, eg., City of Rome v. United States, 446 U.S. 156, 172, 64 L.Ed.2d 119, 100 S.Ct. 1548 (1980);

-11-

*Brown v. Louisiana*, 383 US, 131, 138, 15 L.Ed.2d 637, 86 S.Ct. 719 (1966); and *Walling v. General Industries Co.*, 330 U.S. 545, 547, 91 L.Ed. 1088, 67 S.Ct. 883 (1947).

Construing Art.III, §2, strickly, giving the Framers their due in applying "the natural signification" of the phrase "in Law and Equity" as limiting the "Judicial Power" over the type of "Cases" the federal judiciary is limited to adjudicate, this Court is obliged to construe what "Equity" is defined as, since "Laws" is easily discernible.

"Equity" Is defined in the type of cases that involve disputes and remedies judicially cognizable. In other words — civil cases, and not criminal cases. Cf., e.g., *Association v. Westinghouse Elec. Corp.*, 348 U.S. 437, 449–450, 99 L.Ed. 510, 75 S.Ct. 488 (1955); and *Georgia v. Pennsylvania R. Co.*, 324 U.S. 439, 446, 89 L.Ed. 1051 (1945)("The original jurisdiction is confined to civil suits...").

The presumption is clear. As it is at present, and has been since its drafting by the Framers, the "judicial Power" extends only to civil cases and "[i]n the absence of a properly passed constitutional amendment," *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 838, 131 L.Ed.2d 881, 115 S.Ct. 1842 (1995), enlarging the "Judicial Power" of Article III to encompass "Cases" criminal in nature, Congress can not, unilaterally, vest the federal courts they created with criminal subject-matter jurisdiction as purported by 18 U.S.C. § 3231.

As the Supreme Court makes clear:

"Questions of jurisdiction, of course, should be given priority— since if there is no jurisdiction there is no authority to sit in judgment of anything else. ... "Jurisdiction is power to declare the law, and when it ceases to exist [or never existed], the only function remaining to the court is that of announcing the fact and [reversing the conviction and] dismissing the cause."

-12-

Even jurisdiction over the person (as opposed to subject-matter jurisdiction) "is 'an essential element of the jurisdiction of a district ... court,' without which the court is 'powerless to proceed to an adjudication.'")"

Vermont ANR v. U.S. ex rel. Stevens, 529 u.s. 765, 778-779, 146 L.Ed.2d 836, 120 s.ct. 1858 (2000)(internal citations omitted).

Cf., eg., Arbaugh v. Y & H Corp., 546 u.s. 500, 506, 163 L.Ed.2d 1097, 126 s.ct. 1235 (2006) (objection that court lacks subject-matter jurisdiction may be raised at any time).

Further, as to lack of "personal jurisdiction" of the district court, the Supreme Court has held:

"the jurisdiction of a state is co-extensive with its territory; co-extensive with its legislative power. ...

"To bring [an] offense within the jurisdiction of the courts of the Union, it must have been committed [in an area], out of the jurisdiction of any state. It is not the offense committed, but [the place] in which it is committed, which must be out of the jurisdiction of the state."

United States v. Bevans, 3 wheat, 336, 386-387, 387-388, 4 L. Ed, 404.

As so succintly phrased by the Supreme Court:

"It is true that the criminal jurisdiction of the United States is in general based on the territorial principle, and criminal statutes of the United States are not by implication given an extra-territorial effect."

United States v. Flores, 289 u.s. 137, 155, 77 L.Ed. 1086 (1933).

Cf., eg., Caha v. United States, 152 u.s. 211, 38 L.Ed. 415 (1894):

"The laws of Congress...do not extend into the territorial limits of the states, but have force only in the District of Columbia, and other places that are within the exclusive jurisdiction of the national government."

Id., 152 u.s. at 215.

- 13 -

It is no wonder the Supreme Court reversed and remanded the case of Bond v. United States, ___ U.S. ___, 131 S.Ct. 2355, 180 L.Ed.2d 269 (2011), back to the Third Circuit, based on the Petitioner alleging an injury by the Government enforcing its federal criminal laws when not committed within an area that is within the sole and exclusive jurisdiction of the National Government,

"[B]y denying any one government complete jurisdiction over all concerns of public life, federalism protects the liberty of the individual from arbitrary power. When government acts in excess of its lawful powers, that liberty is at stake....

If the constitutional structure of our Government that protects individual liberty is compromised, individuals who suffer otherwise justiciable injury may object.

Just as it is appropriate for an individual, in a proper case, to invoke separation-of-powers or check-and-balances constraints, so too may a litigant, in a proper case, challenge a law as [applied] in contravention of constitutional principles of federalism.'"

"... The principles of limited national powers and state sovereignty are intertwined, while neither originates in the Tenth Amendment, both are expressed by it. Impermissible interference with state sovereignty is not within the enumerated powers of the National Government, ... and action that exceeds the National Government's enumerated powers undermines the sovereign interests of states. ... The unconstitutional action can cause concomitant injury to persons in individual cases."

Id., 131 S.Ct. at 2364, 2365, 2366, 180 L.Ed.2d at 280, 281, 282 (2011).

In the case sub judice, the Government cannot sustain that the instant underlying federal offense was committed within the

-14-

provinces where the State, which has similar laws proscribing the instant conduct, could not have reasonably, and legally, enforced its own criminal laws therefore.

Thus, just as Bond asserted "that the conduct with which she [was] charged [was] 'local in nature' and 'should be left to local authorities to prosecute' and that congressional regulation of that conduct 'signals a massive and unjustifiable expansion of federal law enforcement into State-regulated domain,'" Id., 131 S.Ct. at 2366, 180 L.Ed.2d at 282, so, too, has the Government intruded into "state-regulated domain" in this case, in violation of the Tenth Amendment.

>"Were it in truth a contention that the District Court lacked jurisdiction, we would be obliged to consider it, even as we are obliged ~~sua sponte~~ to inquire sua sponte wherever a doubt arises as to the existence of jurisdiction,"

Mt. Healthy City Board of Ed. v. Doyle, 429 U.S. 274, 278, 50 L.Ed.2d 471, 97 S.Ct. 568 (1977).

Any argument that Congress may use the "Commerce Clause" as the premise to enact criminal prohibitions is dispelled under a strict construction of the word "commerce" as used in the "Commerce Clause," when considering that the word must be given its meaning as the Framers contemplated and intended it to mean when they used it in 1787. Cf., e.g., United States v. South-Eastern Underwriters Assoc., 322 U.S. 533, 539, 88 L.Ed. 1440 (1944): "Whatever other meanings "commerce" may have included in 1787, the dictionaries, encyclopedias, and other books of the period show that it included trade: business in which persons bought and sold, bargained and contracted. ... Surely, therefore, a heavy burden is on him who asserts that the plenary power which the Commerce Clause grants Congress to regulate "Commerce among the several States" does not include the power to regulate trading in insur-

ance to the same extent that it includes power to regulat other trades or business conducted across state lines," Ibid.

In other words, The Commerce Clause empowers the regulation of legitimate commercial transactions that cross State lines, and that principle can not be better expressed than how the Supreme Court addressed it in <u>Oklahoma Tax Commission v. Jefferson Lines, Inc.</u>, 514 U.S. 175, 131 L.Ed. 2d 261, 115 s.ct. 1331 (1995), when it found that

> "the Commerce Clause's purpose gist of preventing a State from retreating into economic isolation or jeopardizing the welfare of the Nation as a whole, as it would if it were free to place burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear. The provision thus "'reflect[s] a central concern of the Framers that was an immediate reason for calling the Constitutional Convention: the conviction that in order to succeed, the new Union would have to avoid the tendencies toward economic Balkanization that had plagued relations among the Colonies and later among the States under the Articles of Confederation.'"

Id., 514 U.S. at 179-180 (internal citations omitted).

Since it has been demonstrated that even the Constitution, itself, impeaches the application of the federal criminal laws, except for the few expressly enumerated in the Constitution, see <u>McCulloch v. Maryland</u>, 4 wheat. 316, 416-417, 4 L.Ed. 579 (1819); cf, <u>United States v. Lopez</u>, 514 U.S. 549, 596-597, and n. 6, 131 L.Ed.2d 626, 115 s.ct. 1624 (1995) (Mr. Justice thomas, concurring) ("Congress understood that it could not establish nationwide prohibitions"); and <u>Hammer v. Dagenhart</u>, 247 U.S. 251, 275, 62 L.Ed. 1101, 38 s.ct. 529 (1918) ("The control by Congress over interstate commerce cannot authorize the exercise of authority not entrusted to it by the Constitution...

-16-

The maintenance of the authority of the states over matters purely local is as essential to the preservation of our institutions as is the conservation of the supremacy of the Federal power in all matters intrusted to the nation by the Federal Constitution.

In interpreting the Constitution it must never be forgotten that the nation is made up of states, to which are intrusted the powers of local government. And to them and to the people the powers not expressly delegated to the national government are reserved."[1]).

Also,

"under the Constitution and laws of the United States, the rules which govern the pleadings in its courts, in questions of jurisdiction, stand on different principles and are regulated by different laws.

This difference arises, as we have said, from the peculiar character of the government of the United States. For although it is sovereign and supreme in its appropriate sphere of action, yet it does not possess all the powers which usually belong to the sovereignty of a nation. Certain specified powers, enumerated in the Constitution, have been conferred upon it; and neither the Legislative, Executive nor Judicial Departments can lawfully exercise any authority beyond the limits marked out by the Constitution."[2]

Dred Scott, supra, 19 How. at 401, 15 LEd. 691 (1856), and "absen(t) a validly passed constitutional amendment," U.S. Term Limits, supra, enlarging the legislative "Power" of Congress to "establish nationwide prohibitions," the law enforcement branches of the Executive are con-

-17-

stitutionally prohibited from enforcing its federal criminal laws beyond the areas that are within the sole and exclusive legislative jurisdiction of the National Government.

On December 15, 1954, on the recommendation of the Attorney General of the United States, the Honorable Herbert Brownell, Jr., and approved by President Dwight D. Eisenhower, The Interdepartmental Committee For The Study of Jurisdiction over Federal Areas Within The States was formed, with a view toward resolving problems arising out of the jurisdictional status of federally owned areas within the several States. Besides all the members of the President's Cabinet and other advisors, and twenty-five other agencies of the Federal Government; all the then Attorneys General of the then forty-eight States participated to address the problems. The result was a two-part published document that, emphatically, announced, in no uncertain terms, in "The Report,"

"While the Federal Government has power under various provisions of the Constitution to define, and prohibit as criminal, certain acts or omissions {n.4: Ex: Espionage, sabotage, interference with the mails, destruction of Federal property, frauds on the Federal Government, etc.}, it has no power to punish for various other crimes, jurisdiction over which is retained by the States under our Federal-State system of government, unless such crimes occur on areas as to which legislative jurisdiction has been vested in the Federal Government."

The Report, Pt. II, pg. 107 (internal citations omitted) (June, 1957).

Compare, ea., Caha, supra.

In a nutshell, the Committee stated:

"It scarcely needs to be said that unless there has been a transfer of jurisdiction (1) pursuant to clause 17 by a federal acquisition of land with State consent, or (2) by cession from the State to the Federal Government, or unless the Federal Government has reserved Jurisdiction upon the admission

-18-

of the State, the Federal Government possesses no legislative jurisdiction over any area within a State, such jurisdiction being for the exercise entirely by the States, subject to non-interference by the State with Federal functions, and subject to the free exercise by the Federal Government of rights with respect to the use, protection, and disposition of its property."
The Report, supra, pgs. 45-46, and n. 3 (citations omitted).

Illustrative of the jurisdictional boundary separation is the case of In re Ladd, 74 Fed. 31 (C.C. N.D. Neb., 1896):

"The cession of jurisdiction over a given territory takes the latter from within, and places it without, the jurisdiction of the ceding sovereignty. After a state has parted with its political jurisdiction over a given tract of land, it cannot be said that acts done thereon are against the peace and dignity of the state, or are violations of its laws; and the state certainly cannot claim jurisdiction criminally by reason of acts done at places beyond, or not within, its territorial jurisdiction, unless by treaty or statute it may have retained jurisdiction over its own citizens, and even then the jurisdiction is only over the person as a citizen."
Id., 74 Fed. at 40.

Another prime example of the proscription of one sovereign intruding into that of another, "over a criminal act occurring in an area as to which only the other of those governments has legislative jurisdiction is demonstrated by the case of United States v. Tully, 140 Fed. 899 (C.C. D. Mont., 1905)." See The Report, Pt. II, pg. 107-108. In that case, because of the circumstances explained by the court, Tully, in essence, got away with murder because neither the State nor the Federal Government could constitutionally prosecute the case.

In short, just as the State and its officers cannot enforce its criminal laws of the State violated within an enclave of the

-19-

Federal Government located within its borders, it stands to reason the Federal Government, or its officers, cannot enforce its federal criminal laws violated beyond the federal enclave.

As the Committee clearly stated:

"The Federal Government cannot, by unilateral action on its part, acquire legislative jurisdiction over any area within the exterior boundaries of a State. Article I, section 8, clause 17, of the Constitution, provides that legislative jurisdiction may be transferred pursuant to its terms only with the consent of the legislature of the State in which is located the area subject to the jurisdictional transfer. As was indicated in chapter II, the consent requirement of article I, section 8, clause 17, was intended by the framers of the Constitution to preserve the States' jurisdictional integrity against federal encroachment."

The Report, Pt. II, pgs. 46-74 (internal citations omitted).

Because the Government has not, and cannot, come up with any facts that establish that the State Legislature in which the instant alleged federal offenses occurred has been ceded to the Federal Government, under the Tenth Amendment, and case law jurisprudence, the Federal Government lack "Power" to enforce its criminal laws not on federally-owned areas within the State, thus the district court was want of both "personal" and "subject-matter" jurisdiction for the reasons and matters of law, supra.

The admonition of the Supreme Court is clear, just as "a plea of guilty to a charge," nor a guilty verdict in a trial, "does not waive a claim that judged on its face the charge is one which the [Government] may not constitutionally prosecute." Menna v. New York, 423 U.S. 61, 63 n.2, 96 s.ct. 241, 242 n.2, 46 L. Ed. 2d 195 (1975).

-20-

Therefore, there is no doubt that a prosecution of a criminal case in a court that is want of jurisdiction constitutes an "error," that is "plain," and "affects substantial rights" of a defendant. Thus, with all of the foregoing demonstrations so clear before this Court, there can be no dispute that the error "seriously affects] the fairness, integrity or public reputation of judicial proceedings," in the court below, in order for this Court to correct the error under Rule 52(b) of the Federal Rules of Criminal Procedure, under _United States v. Olano_, 507 U.S. 725, 732, 123 L.Ed.2d 508, 113 S.Ct. 1770 (1993), especially where, as here, the showing that the Government and the District Court was want of valid constitutional and statutory power to so prosecute and sit in judgment in the case must be viewed as a "structural defect[ ] in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards ... [and] requires automatic reversal of the conviction because [it] infect[ed] the entire trial process." _Brecht v. Abrahamson_, 507 U.S. 619, 629-630, 123 L.Ed.2d 353, 113 S.Ct. 1710 (1993) (internal citation and quotation marks omitted).

As the Supreme Court admonishes in situations such as this:

"We do not release a criminal from jail because we like to do so, or because we think it wise to do so, but only because the government has offended constitutional principles in the conduct of his case. And when another similarly situated defendant comes before us, we must grant the same relief...."

_United States v. Johnson_, 457 U.S. 537, 561-562, 73 L.Ed.2d 202, 102 S.Ct. 2579 (1982).

-21-

"This approach... recognizes that Congress, like this court, is bound by and swear an oath to uphold the Constitution." United States v. I Bm Corp., 517 U.S. 843, 868, 135 C.Ed. 2d 124, 116 S. ct, 1793 (1996).

I Ismael Arenas as Appellant present several othere issues for the court's consideration, some of which are raised in counsel's Anders Brief, and some of which were omitted from the brief, but all of which bear great weight in Appellant's mind as concerning arguments in favor of his appeal.

Appellant also address that the Counsel for this appeal no: 11-1322 din't raise in her Anders Brief the "Table of Contents" that I have raise from page 1- to 4 of this Response also din't raise the "statement of the issues presented for Review" and the "Preliminary Opening Statement" and nothing about my "Argument" of § 3231 being unlawful and False as I have raised from Page 1- to 22 on this Brief. She also din't raise othere issues that I am presenting to this court's in this In-formal Brief that proves that this entire case 04F22213 and 04-cr-00282- are incorporated with False information which where entirely fabri- cated and are therefore invalid, proving that I not only was inten- tionally "defamed" and unlawfully indicted, but I also was Prosecu- ted under § 3231 being False and unlawful, as you see as follows,

Appellant address that there was no probable cause underlining the search warrant, contending that the affidavit incorporated False information which was entirely fabricated, and is therefore invalid. Regarding the section in the Anders Brief titled "Facts About the Affidavit For Search warrant and the Motion to Suppress Evidence that were allegedly Recovered at defendant's residence" [Anders Brief at 6 ff], the court Found that "statements attributed to the allegedly Confidential Informant #2, coupled with police surveillance allegedly, established Probable cause" to issue the search warrant. [Id. at 8]. Appellant asks this court to re-examine the Fact that Detective Rojas' own testi- mony states "that during his surveillance of the property, he personally observed no illegal activity" [Id. at 8] in light that Detective Rojas Further testified " that he has no reports of the intermittent surveillance that he allegedly conducted" [Id. at 11] and

page 22-of,

↖ that none of his allegedly surveillance activities are documented any where other than in his affidavit Dated 5-24,04". [Id. at 12] Regarding the allegedly confidential Informant #2, whose identity has never been establishe, Detective Rojas testified "that she never been established, Detective Rojas testified "that she has since been deported" [Id. at 12] and therefore was never made available for cross-examination by the Defense, violating the right under Due process to cross-examine." The witness's departure caused prejudice by eliminating the allegedly testimonial evidence that would be material and favorable to the defense." [Id. at 4] See United States V. Ramos, 179 F. 3d 1333, 11ca 1999 (Defenday denied opportunity to depose out-of-country witness]; See also United States V. Blanco, 392 F. 3d 382, 9ca, 2004 (Government suppressed information about Confidential informant). The entire case turns on whether the affidavit for the search warrant was valid, and without the corroboration of the allegedly statements made to Detective Rojas by the allegedly confidential Informant #2, there is no means available to examine the information that the allegedly Informant allegedly provided to the Detective Daniel E. Rojas to support the issuance of the search warrant. [Id. at 39] Moreover, Detective Rojas agreed that the allegedly confidential Informant #2 "was working off criminal charges, and therefore allegedly she had "some incentive to produce'". [Id. at 12] all of the above casts significant doubt on the reliability of the allegedly statements made by the allegedly confidential Informant #2 to Detective Rojas, or whether any such statements were made at all, given the Government's inability to produce the allegedly person who allegedly made the statements or even to substantiate her existence. [Id. at 40 cmt]. and the fact that Det. Rojas did not affirm nor mention in his affidavit Dated 5-24,04 A precise hour and Day of A Date of when the allegedly confidential Informant #2 made the one allegedly single buy from me, the appellant with marked money allegedly provided by Det. Rojas. #2-Det. Rojas did not affirm nor mention in his affidavit if yes or no he or officers recovered the allegedly marked money, #3— Det. Rojas in his affidavit dated 5-24,04 did not affirm nor mention why NOBODY was arrested as a consequence of that buy of illegal drugs when that was the only buy that they allegedly did with marked money allegedly from me. #4 — Detective Daniel Rojas dind not affirm in his affidavit if yes or no, he or officers produced any Kind of recordings with or without photographs to the allegedly Phone Calls that his confidential Informants did allegedly to me the appellant when they were allegedly talking to me the appellant.

All Combined, these ──────

Page 23-of,

Facts created a loophole for circumventing Appellant's Constitutional rights of Due Process. Appellant argues that under United States V. Hill, 55 F. 3d 479, 9ca, 1995, remand is required to determine if there was a truly viable independent source for the search.

Appellant next addresses issues regarding the allegedly firearm that allegedly attributed to the Appellant. During trial, officer Brian Jeffers testified that "he recovered the firearm from the upstairs bedroom" [Id. at 14], yet no one bothered to document the finding by photographing the illegal items claimed in the "Return an inventory" Report as evidence where it were allegedly found" by officer Jeffers and the other officers despite the fact that the officers had a camera and were using it to document legal items that are not documented in the "Return and inventory" Report that is singed by Det. Rojas and other officer. It is odd that the officers having a camera or cameras chose not to document the weapon and items listed in the "Return and inventory" Report, yet on cross-examination, officer Jeffers "testified that he cannot recall whether he asked someone to take photographs of the location where he recovered the gun." which he means to take photographs to a location that had no gun or illegal items." [Id. at 14]. The Appellant has firmly denied that he owned or possessed or keep for any one nor guard for any one any such weapon, and that the location where the weapon was allegedly found by officer was not a bedroom that was occupy by me the appellant to live in.

The Government never tied the weapon to the Appellant through Forensic evidence or fingerprint analysis, relying only on false statements made by Sharon Bateman and William Bateman-- brother and sister-- who provided their testimony against Appellant under grant of immunity for their own Criminal wrongdoing. [Id. at 17, 18] See United States V. Sipe, 388 F. 3d 471, 5ca 2004 [Government failed to reveal witness biased and Criminal history and mental history and mental status]. Ultimately the allegedly weapon-- along with all other allegedly evidence against Appellant in this case [except for the recovered cash which went to the City's general fund unlawfully]-- was "allegedly destroyed because allegedly errors within the police department" "prior to any federal charges being filed in federal level against appellant. This fact proves that the federal Government never had in their possession at no time in life any allegedly item as evidence that are listed in the "Return and inventory" Report. Yet Appellant has obtained Documentation indicating conflicting disposition of the weapon as evidence. A Denver Police Department Inter-Department Correspondence dated September 6, 2006 states the weapon in question was "Reported stolen out of Golden, Co

PD", whereas a report of the Denver Police Department Property Section Inventory System states the weapon was destroyed on January 22, 2006. These conflicting report of the weapon's disposition cannot be true becaus one claim being stolen out of Golden, Co PD, and the other claim being destroyed by the Denver Police Department Property Section Inventory System.

These conflicting reports of the weapon's disposition cannot be true.

Counsel's Anders Brief shows that Appellant's sppeedy trial rights were violated [Id. at 43 ff]. Alongside Counsel's arguments in the Anders Brief, Appellant adds that he never signed any waiver of his rights, waiving his right for speedy trial, and was never advised by any of the Attorneys about this right, and was never advised that the sppeedy trial clock would stop, or even be rest, in certain circumstances. See United States v. Young, 528 F.3d 1294, 11Cq, 2008 [Filing superseding indictment for and additional charge did not reset speedy trial clock]. Appellant is not an attorney, ~~not~~ Appellant speedy trial rights should have been protected by counsels. And going by the District Court Criminal Docket for this case# 04-cr-00282 the Attorneys had enough time to take the appellant to trial before they were Remove from appellant's case# 04-cr-00282.

Among issues not raised in the Anders Brief, Appellant points out that the "General Incident Report" filed with the Denver Police Department was obviously "altered", presumably by Detective Rojas. This is based on the fact that officer Cervera who filed the report listed only one suspect, as you can see in that page, clearly shows that it was made specifically for one suspect only, as you can see where still shows suspect one-of-suspect 1 in officer Cervera hand writing, also you will notice in the first line the total page count was changed by Det. Rojas from sheet 1-of-1, to sheet 1-of-2. you will notice that sheet #2 concemning Jorge Castillo was wroted entirely by Det. Rojas, you will notice also that Det. Rojas did not sing that report to avoid that somebody will find out that he took part in writting paragraphs in that report constituting Forgery. Also in other report made by an officer that name looks like Rios see in the page under the writen name of wayne Dibble, you will notice that something else was previously writen and erased and after erasing the previous information the name wayne Dibble

was added, and was subsequently determined to be a clear match with A Report wroted by Det. Rojas Requesting to see Return and Inventory, as well match with A summos wroted by Det. Rojas # GD-782628. As you notice that Det. Rojas did not sing officer Rios Repor to avoid that somebody will find out that he took part in writing paragraphs in officer Rios Report constituting forgery, whereas Det. Rojas added the name of Jorge Castillo (aka Ismael Arenas Gonzales). Further, Det. Rojas is the only source in the entire case file who names Ismael Arenas Gonzales as a drug dealer and the only source in the entire case Files to state that the upstairs bedroom where the weapon was allegedly found was Appellant's bedroom. Also notice that Det. Rojas undated and unsing Supplementary Report of 4-pages, in page 3- Det. Rojas claims affirming that item #5 was found under the bed and mattress, which means that was found on the Floor under the bed and mattress, and officer Jeffers, Briant Report dated 5-28,04 Mr. Jeffers claims that the item #5 was found underneath the mattress, which means in between the mattress and bed.

Appellant has further attached various documents previously filed and unfiled which pertain to this Case No. 11-1322 and the issues raised above, requesting the Court to treat all attachments as being one in the same with this response. I the Appellant have attached with this Response A-Report of 12-pages with 120-Pages of Goverment Documents and hand wroted Reports as Ehxibits of the 12-pages Report.

I the Appellant also have attached with this Response A-hand wroted Report as an Index of-False witness's in regard Sharon Bateman and William Bateman False testimonies and or Statements. The hand wroted Report is of 8-Ehxibits, the total of Pages are-152 with the Government Documents that I have attached in this 8-Ehxibits Report.

I the Appellant Certified that I have Send in the Same Date that I send this response to the Court, by regular Mail, I send the-120 and 152-pages of Documents to the Court of Appeals 10-Circuit, in A diferent Package to be treated by this Court as being one in the Same with this Response. I certified that I have send 4 copies of this Response to the 10-Circuit Court of Appeals in the state of Co. City of Denver, and 1-Copy to the Prosecutors office in Denver Co. in the same day-of Date below

page 26-of,

## "CONCLUSION"

I, Ismael Arenas Gonzáles are badly injured in different ways by the Lower Rank Law enforcement Employees, by the use of my name in the charging Instrument was stolen under the Courts Employees ~~unlawful~~ unlawful usse of my name. The Courts Careless about the person in question but focus on the monitary Value of the "WARRANT" Sold in Commerce by fraudulent means.

For the foregoing reasons and matters of Law, Defendant respectfully asks this Court to reverse the Judgment of the District Court, and Order the dismissal of the Indictment with prejudice and release me giving me back all my personal Identification Instruments as follows: U.S. Citizenship or (Green-Card); and Social Security #: 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  : and any and all Identification Instruments associated to the Individual as named herein this Instrument Response.

Respectfully Submitted on 1-27, 2012.

Ismael Arenas Gonzáles

Ismael Arenas Gonzáles
Appellant Pro-se
Reg: No. 32780-013
United States Penitentiary
P.O. Box 24550, Tucson, Arizona 85734

### Certificate of service

I hereby certify that a copy of the foregoing Appellant's Pro-se Response to Counsel's Anders Brief with Authorities and Points of Law why the Convictions must be vacated was served, by First class mail, on this  27  day of January of , 2012, on the United States Attorney, 1225 17th Street East, Seventeenth Street Plaza, # 700, Denver, Co. 80202, And 4-Copeis to the 10 circuit court of Appeals in Denver Colorado by Certified Mail   Ismael Arenas Gonzáles
U.S. Postal Service.

This is the Certified #
7011-1150-0000 0262 7652

by— Ismael Arenas Gonzáles, pro-se.

page 27-of, 27.